01
02
03
04
05                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
06                            AT SEATTLE

07  PAUL A. STORIE,                      )   CASE NO. C07-0767-MJP
                                         )
08          Plaintiff,                   )
                                         )
09          v.                           )   REPORT AND RECOMMENDATION
                                         )   RE: SOCIAL SECURITY
10  MICHAEL J. ASTRUE,                   )   DISABILITY APPEAL
    Commissioner of Social Security,     )
11                                       )
            Defendant.                   )
12  _____ )

13      Plaintiff Paul A. Storie proceeds through counsel in his appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner). The Commissioner denied

15  plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative

16  Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all

17  memoranda of record, it is recommended that the Commissioner's decision be AFFIRMED.

18                          **FACTS AND PROCEDURAL HISTORY**

19      Plaintiff was born on XXXX, 1959.[1]  He completed high school and previously worked

20  _____

21      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22  official policy on privacy adopted by the Judicial Conference of the United States.

in construction.

With a filing month of January 2004, plaintiff filed an application for DI benefits, alleging disability beginning December 24, 2003, based on a closed head injury and back and neck pain. (AR 51-55.) His application was denied at the initial level and on reconsideration, and he timely requested a hearing.

On September 6, 2006, ALJ M.J. Adams held a hearing, taking testimony from plaintiff, his wife Victoria Storie, and vocational expert Ronnie Beall. (AR 436-69.) On November 21, 2006, ALJ Adams issued a decision finding plaintiff not disabled. (AR 13-23.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on March 14, 2007, making the ALJ's decision the final decision of the Commissioner. (AR 5-7.) Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 24, 2003. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease and organic mental disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairment. If a claimant's

impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift twenty pounds occasionally and ten pounds frequently; able to only occasionally climb, balance, stoop, kneel, crouch, and crawl; unable to climb ladders, ropes, or scaffolds; limited to simple repetitive tasks, making simple work-related decisions, responding appropriately to supervisors, coworkers and usual work situations, and dealing with changes in a routine work setting. The ALJ determined that plaintiff was unable to perform his past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a cashier, storage rental clerk, information clerk, and gate guard.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff asserts that the ALJ improperly gave little to no weight to the opinions of

examining physicians, vocational counselors, and the disability determination by the Veteran's Administration. His memorandum contains very little in the way of argument and simply recites a series of medical opinions and documents favorable to his claim for disability. He did not submit a reply.[2] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons described below, the Court agrees with the Commissioner.

<u>Physicians' Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff argues that the ALJ erred in discounting the opinions of multiple physicians. However, the only "acceptable medical source" identified by plaintiff, *see* 20 C.F.R. § 404.1513(a) and *infra* at page 8, is examining physician Dr. Brian Buchea. Dr. Buchea opined in a September 28, 2004 report: "I feel this patient is completely disabled as far as any useful occupation and will be that way. No further diagnostic tests or treatment would be recommended." (AR 287.) He

---

[2] Plaintiff's counsel is advised to expend far greater effort in any future submissions to this Court, including detailed arguments with respect to each individual proposed error.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 placed plaintiff "in a category 4 of cervical dorsal impairment due to the multiple herniations of

02 the discs, as well as narrowing with impingement of the cord and decreased ROM in all ranges"

03 and "category 3 of mild low back impairment due to the almost absence of ROM in flexion and

04 extensions and decreased ROM in other ranges." (*Id.*) Dr. Buchea also noted that, due to the

05 tendency for clotting in the left leg, plaintiff would probably be on Coumadin for the rest of his

06 life. (*Id.*)

07 As noted by the Commissioner, Dr. Buchea's opinion was contradicted by the opinions of

08 State agency reviewing physicians Drs. Robert Hoskins and Alnoor Virji. (AR 280-84.) Those

09 physicians found plaintiff capable of light work with some postural limitations. (*Id.*) The ALJ

10 found the opinions of Drs. Hoskins and Virji supported by the medical record as a whole and

11 consistent with plaintiff's reported activities and with the findings of a physical capacities

12 evaluation. (AR 21 (citing AR 412-32).) Accordingly, given the contradictory opinions, the ALJ

13 need only have provided specific and legitimate reasons for rejecting the opinions of Dr. Buchea.

14 The ALJ stated the following with respect to Dr. Buchea's September 2004 report: "Three

15 months after this the claimant was spending his time in Southeast Asia, mostly away from cities

16 and in the countryside, much of the time scuba diving in the beaches of Thailand. Dr. Buchea

17 clearly was unaware of the claimant's capabilities at the time he stated that the claimant was

18 completely disabled." (AR 21; internal citation to record omitted.) Previous to this determination,

19 in finding plaintiff not entirely credible, the ALJ pointed to a number of other activities inconsistent

20 with plaintiff's purported degree of impairment. (AR 20 (noting that plaintiff played pool, used

21 a riding lawn mower, visited family, did household chores including doing the dishes and

22 vacuuming, went to the store, went on drives with his wife, went camping in Oregon, had planned

01 to fly to Hawaii for his honeymoon, and had traveled to Arizona).) The ALJ also noted in the

02 credibility assessment that, although plaintiff had informed his physicians – including Dr. Buchea

03 (*see* AR 286-87) – "that he could not have back surgery because of his need to be on Coumadin,

04 . . . the neurosurgeon he saw stated that he did not feel the claimant's symptoms and findings were

05 severe enough to merit surgery. . ." (AR 20 (citing AR 245 (April 13, 2004 report from Dr.

06 Sanford Wright: "I believe at least some of Paul's symptoms could be arising from the cervical

07 spondylosis/degenerative disk bulging at the C5-6 level on both sides. However, I do not feel the

08 symptoms and findings are severe enough to merit surgery at this time.")) 

09 In sum, the ALJ did provide specific and legitimate reasons, both direct and indirect, for

10 rejecting the opinions of Dr. Buchea. Plaintiff fails to demonstrate any error in the ALJ's

11 consideration of this physician's opinions.

## Veteran's Administration

13 Plaintiff asserts without any discussion that the ALJ erred in giving little to no weight to

14 the disability determination of the Veteran's Administration (VA). The ALJ assessed the VA

15 determination as follows:

16 The Veteran's Administration has found that the claimant is disabled. They apparently largely based this opinion on a statement from the claimant's treating
17 psychiatrist. However, I note that the treatment notes from this doctor indicate that the claimant's [Global Assessment of Functioning (GAF)] is in the 60s suggesting
18 only mild limitations. Additionally, his psychiatrist opined that the claimant was unable to work years before he stopped working. He based this on the fact that the
19 claimant was working for a friend. The claimant may have been working for a friend, but he maintained steady employment through 2003 when he injured his back. The
20 claimant said that he was able to do the work because it was repetitive in nature. I accept this. While the Veteran's Administration opinion is usually given significant
21 weight, it can be discounted. In this case the decision on disability seems largely related to mental impairments that the claimant had for years prior to his leaving
22 work, and the limitations are not supported by the treatment notes of his psychiatrist.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 (AR 20-21.)

02 An ALJ must ordinarily give "great weight" to a VA determination of disability. *McCartey*
03 *v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, because the VA and Social
04 Security Administration criteria for determining disability are not identical, the ALJ may give the
05 VA rating less weight provided "he gives persuasive, specific, valid reasons for doing so that are
06 supported by the record." *Id.*

07 Here, the VA "granted entitlement to individual unemployability based on the statement
08 from Dr. [Rosina] Lakhani that [plaintiff was not] able to obtain and retain full time gainful
09 employment due to [his] traumatic brain syndrome." (AR 151.) The undersigned was not able
10 to find in the record the statement from Dr. Lakhani referred to by the VA. However, the ALJ
11 accurately noted inconsistencies between Dr. Lakhani's treatment notes and the opinion as
12 described by the VA. (*See*, *e.g.*, AR 256 (September 24, 2003 assessment of 65 GAF) and AR 262
13 (June 24, 2003 assessment of 60-70 GAF).) The ALJ also appropriately noted the fact that
14 plaintiff continued to work for years despite his allegedly disabling impairments, including the brain
15 injury he sustained in 1987. On that note, the ALJ's reference to plaintiff's psychiatrist appears
16 to refer to Dr. Debbie McKinney, particularly a July 30, 2000 letter in which she stated that, were
17 it not for the fact that plaintiff worked for a friend, she did not believe he would be able to keep
18 a job. (AR 189.) As noted by the Commissioner, although the ALJ did not specifically reference
19 this fact, it does appear that plaintiff reported to Dr. McKinney in August of 2001 that he quit the
20 job with his friend and had started new employment. (AR 185.) For all of these reasons, it can
21 be said that the ALJ gave persuasive, specific, and valid reasons for discounting the VA
22 determination.

01          Additionally, to the extent that this argument raises an indirect challenge to the ALJ's

02 assessment of the opinions of Drs. Lakhani or McKinney, the Court sees no error.  As reflected

03 above, the record supports the ALJ's conclusion as to the inconsistency between Dr. Lakhani's

04 treatment notes and the opinion adopted by the VA, as well as the fact that plaintiff continued to

05 work long after Dr. McKinney's July 2000 opinion.  Given the existence of contradictory opinions

06 from state agency physicians and the ALJ's adoption of those opinions (AR 17, 21 and 263-79),

07 the ALJ's reasoning with respect to Drs. Lakhani and McKinney was sufficient.

08                                           Other Medical Sources

09          Plaintiff points to several different pieces of evidence from non-physicians.  In evaluating

10 the weight to be given to the opinion of medical providers, Social Security regulations distinguish

11 between "acceptable medical sources" and "other sources."  Acceptable medical sources include

12 licensed physicians and other specified medical professionals, but not, for example, chiropractors

13 or physician's assistants, who are considered "other sources."  20 C.F.R. §§ 404.1513(a) and (e),

14 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p (available at 2006 WL 2329939).

15 Less weight may be assigned to the opinions of other sources than acceptable medical sources.

16 *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

17          SSR 06-03p gives guidance for evaluating relevant evidence from other sources, providing

18 that the weight will vary "according to the particular facts of the case, the source of the opinion,

19 including that source's qualifications, the issue(s) that the opinion is about", and other factors,

20 such as the length of treatment relationship and frequency of examination, the consistency of the

21 opinion with other evidence, the degree to which relevant supporting evidence is provided, how

22 well the opinion is explained, and whether the source has a specialty or area of expertise.  *See also*

01 20 C.F.R. § 404.1527 (citing and describing relevant factors). "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case". *Id.*

A. <u>Chiropractor John Holden</u>

Plaintiff first points to a July 2004 report from chiropractor John Holden in which he opined that it was unlikely plaintiff would be able to return to construction work. (AR 310-11.) However, this is consistent with the ALJ's own conclusion that plaintiff could not perform his past relevant work. Further, as noted by the ALJ, Holden also opined that plaintiff "may benefit from some type of vocational counseling to explore employment options[,]" and that, although plaintiff continued to have problems, he felt plaintiff's condition was stable. (*Id.*; AR 16.) Plaintiff fails to demonstrate any error with respect to Holden.

B. <u>Physical Capacities Evaluation</u>

Plaintiff next points to an August 2004 physical capacities evaluation that found him capable of light work but projected that he did "not demonstrate an activity tolerance adequate for full-time due to need for rest breaks." (AR 322.) The ALJ described this evaluation and another physical capacities evaluation performed in February 2006, the latter of which concluded plaintiff could perform sedentary work on a full-time basis. (AR 16, 18; AR 431.) However, later in the decision, the ALJ specifically assessed only the later, February 2006 evaluation. (AR 21.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01    As argued by the Commissioner, while not specifically assessing the part-time aspect of

02 the 2004 evaluation, the ALJ, finding plaintiff capable of full-time work, implicitly rejected such

03 a limitation. The ALJ largely agreed with the later, February 2006, evaluation, while providing

04 sufficient reasons for rejecting that evaluation's limitation to sedentary work. (AR 21.) The ALJ

05 immediately thereafter found the opinions of the state agency physicians, who found plaintiff

06 capable of full time work, supported by the record as a whole and consistent with the February

07 2006 evaluation. (*Id.*) Given these findings, the ALJ's failure to explicitly reject the August 2004

08 limitation to part-time work does not present reversible error.[3]

09 C.    Physician's Assistant Carlos Aguero

10    Finally, plaintiff points to the February 16, 2006 opinion from physician's assistant Carlos

11 Aguero that plaintiff was "unlikely to be rehabbed vocationally to any form of light duty because

12 of his chronic brain syndrome and his antisocial behaviors that he has had in the past." (AR 325.)

13 The Commissioner argues that the ALJ properly rejected this opinion as contradicted by plaintiff's

14 ability to work for many years with these same impairments. ( *See* AR 21 ("In considering the

15 claimant's mental limitations, I note that the claimant worked many years after his head injury,

16 sustaining a good job for years. He has demonstrated an ability to perform simple, unskilled work

17 that does not involve working with the general public.")) However, the ALJ never mentioned

18 Aguero or his February 2006 report. Instead, he described only a report from Aguero's colleague,

---

[3] Plaintiff also points to a September 14, 2004 vocational progress report from Rainier Case Management, Inc. (AR 111.) However, as noted by the Commissioner, this report simply reiterates the contents of the August 2004 physical capacities evaluation in narrative form and need not have been separately addressed by the ALJ.

01 Dr. Leonard Kolodychuk, dated a month later, on March 10, 2006. (AR 18; AR 323-34.) Dr. Kolodychuk reiterated the opinions of Dr. Wright and Aguero that plaintiff should continue with "nonoperative care" and made no mention of any mental limitations. (AR 324.)

04 The ALJ clearly did not provide any reason specific to Aguero in rejecting the opinion; indeed, he entirely omitted mention of Aguero and his report. SSR 06-03p states: "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Moreover, the Ninth Circuit Court of Appeals has held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

14 In this case, the Court finds the failure to discuss Aguero's report to be harmless. Aguero is an orthopedic physician's assistant and, although he discussed petitioner's mental health issues in the report and made the above-stated opinion regarding vocational rehabilitation, his purpose on examination was to consider plaintiff's physical complaints, particularly his neck and back pain. Given both his status as a non-acceptable medical source and his specialty in orthopedics, it is unlikely Aguero would be considered qualified to render an opinion based on plaintiff's mental health. It should also be noted that Aguero's opinion appears to rely entirely on plaintiff's self-report (*see* AR 325) and goes to the ultimate issue of disability reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1) (determination as to whether or not an individual is disabled or unable

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

to work is an issue reserved to the Commissioner).

Further, as argued by the Commissioner, the ALJ gave a legitimate reason for rejecting plaintiff's mental limitations. Plaintiff fails to present any persuasive challenge to either that finding or the ALJ's assessment of physicians' opinions pertinent to that finding. Additionally, as far as plaintiff's physical conditions are concerned, Aguero's findings are not inconsistent with those of the ALJ in that Aguero, along with Aguero's colleague Dr. Kolodychuk and examining physician Dr. Wright, found no basis for surgery.

Given all of the above, the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. The omission as to Aguero's report is harmless and does not justify a remand.

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 5th day of February, 2008.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12